UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID IRVIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CABELA'S L.L.C. and BPS DIRECT, L.L.C.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff David Irvin ("Plaintiff"), on behalf of himself and all other similarly situated (the "Class Members") bring this case against Cabela's L.L.C. ("Cabela's") and BPS Direct, L.L.C. ("BPS") (collectively, "Defendants") which operate, control and manage the websites cabelas.com and basspro.com respectively. Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of all Pennsylvania residents who have visited and/or purchased firearms from cabelas.com and/or basspro.com.

2. Defendants aid employ, agree, and conspire with Facebook/Meta[1] to intercept communications sent and received by Plaintiff and Class Members, including communications

---

[1] In October 2021, Facebook, Inc. changed its name to Meta, Inc. Unless otherwise indicated, Facebook, Inc. and Meta, Inc. are referenced collectively herein as "Facebook."

containing protected information about firearms purchases.  Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, inter alia, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed class; (b) some members of the proposed Class have a different citizenship from Defendant; and (c) the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  See 28 U.S.C. § 1332(d)(2) and (6).

4. This Court has personal jurisdiction over Defendant because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

6. Plaintiff David Irvin is an adult citizen of the Commonwealth and is domiciled in Fredericksburg, Pennsylvania.  On December 2, 2021, Plaintiff Irvin purchased a Henry Big Boy Classic Centerfire Lever-Action Rifle - .45 Colt from cabelas.com.  Plaintiff Irvin also has an active Facebook account which he has maintained since approximately 2007.  Plaintiff Irvin accesses his Facebook account from multiple devices, including his laptop and smartphone.

7. Defendant Cabela's L.L.C. is a Pennsylvania company headquartered in Springfield, Missouri.  Cabela's owns and operates cabelas.com, through which it sells sporting goods, including firearms.  Cabela's is a wholly-owned subsidiary of BPS Direct, L.L.C.

8. BPS Direct, L.L.C., doing business as Bass Pro Shops, is a Delaware corporation headquartered in Springfield, Missouri. BPS owns and operates basspro.com, through which it sells sporting goods, including firearms. BPS is the parent company of Cabela's.

9. Pursuant to the systematic process described herein, Defendants, through cabela's.com and basspro.com, assisted Facebook with intercepting Plaintiff's communications, including those that contained personally identifiable information and protected information about their firearms purchases. Defendants assisted these interceptions without Plaintiff's knowledge, consent or express written authorization. By failing to receive the requisite consent, Defendants breached confidentiality and unlawfully disclosed Plaintiff's personally identifiable information and protected information about their firearms purchases.

## FACTUAL ALLEGATIONS

### A. Facebook and the Facebook Tracking Pixel

10. Facebook is the largest social networking site on the planet, touting 2.9 billion monthly active users.[2] Facebook describes itself as a "real identity platform,"[3] meaning users are allowed only one account and must share "the name they go by in everyday life."[4] To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[5]

---

[2] Sean Burch, *Facebook Climbs to 2.9 Billion Users, Report 29.1 Billion in Q2 Sales*, YAHOO (July 28, 2021), https://www.yahoo.com/now/facebook-climbs-2-9-billion-202044267.html
[3] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).
[4] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.
[5] FACEBOOK, SIGN UP, https://www.facebook.com/

11. Facebook generates revenue by selling advertising space on its website.[6]

12. Facebook sells advertising space by highlighting its ability to target users.[7] Facebook can target users so effectively because it surveils user activity both on and off its site.[8] This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections."[9] Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements.[10]

13. Advertisers can also build "Custom Audiences."[11] Custom Audiences enable advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[12] Advertisers can use a Custom Audience to target existing customers directly, or they can use it to build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities."[13] Unlike Core Audiences, Custom Audiences require an advertiser to supply the underlying data to

---

[6] Mike Isaac, *Facebook's profit surges 101 percent on strong ad sales.*, N.Y. TIMES (July 28, 2021), https://www.nytimes.com/2021/07/28/business/facebook-q2-earnings.html.
[7] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.
[8] FACEBOOK, ABOUT FACEBOOK PIXEL, https://www.facebook.com/business/help/742478679120153?id=1205376682832142.
[9] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.
[10] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK, https://www.facebook.com/business/news/Core-Audiences.
[11] FACEBOOK, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=2469097953376494.
[12] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273.
[13] FACEBOOK, ABOUT LOOKALIKE AUDIENCES, https://www.facebook.com/business/help/164749007013531?id=401668390442328.

Facebook. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools," which collect and transmit the data automatically.[14] One such Business Tool is the Facebook Tracking Pixel.

14. The Facebook Tracking Pixel is a piece of code that advertisers, like Defendant, can integrate into their website. Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[15] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook. Once this record is received, Facebook processes it, analyzes it, and assimilates it into datasets like the Core Audiences and Custom Audiences.

15. Advertisers control what actions—or, as Facebook calls it, "events"—the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views and what buttons a visitor clicks.[16] Advertisers can also configure the Facebook Tracking Pixel to track other events. Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[17] An advertiser can also create their own tracking parameters by building a "custom event."[18]

---

[14] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097953376494; FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494.
[15] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.
[16] *See* FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; *see also* FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142.
[17] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655?id=1205376682832142.
[18] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005?id=1205376682832142.

16. Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[19] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[20] Pixel-specific Data includes "the Pixel ID and cookie."[21]

B. **Defendants' Websites and the Facebook Pixel**

17. Defendants' websites cabelas.com and basspro.com are largely mirror images of one another. Both host code for the Facebook Tracking Pixel and are configured to transmit three distinct events to Facebook:[22]



18. PageView transmits the Uniform Resource Locator ("URL") accessed, which shows what webpage the visitor visited:

---

[19] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/.
[20] *Id.*
[21] *Id.*
[22] This data derives from a tool created and offered by Facebook.



19. ViewContent shows similar information to PageView, but specifically tracks when users access pages for particular products.

20. Microdata transmits the title and description of the webpage:



21. Another event titled "Button Click Automatically Detected" registers when users add a product, such as a firearm, to their online shopping cart and when they checkout:

7



22.     This event data, jointly and independently, permit an ordinary person to identify what a consumer has viewed and/or purchased on Defendant's websites.

23.     The Facebook Tracking Pixel uses both first- and third-party cookies.  A first-party cookie is "created by the website the user is visiting"—*i.e.*, cabelas.com or basspro.com.[23]  A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—*i.e.*, Facebook.[24]

24.     When viewing Defendants' websites, the Facebook Tracking Pixel compels the user's browser to send nine cookies to Facebook:

---

[23] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie. This is confirmable by using developer tools to inspect a website's cookies and track network activity.
[24] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie.  This is also confirmable by tracking network activity.

| Name | Value | Domain |
|---|---|---|
| xs | 156%3AKGXBbut-SjxSCw%3A2%3A1639601808%... | .facebook.com |
| wd | 1313x646 | .facebook.com |
| usida | eyJ2ZXIiOjEsImlkIjoiQXJvZndreDE1OTA1ZmsiLCJ0... | .facebook.com |
| c_user | 679395441 | .facebook.com |
| datr | jVa6YcoeBSLOAo0a9bvz1mtE | .facebook.com |
| presence | C%7B%22t3%22%3A%5B%5D%2C%22utc3%22%... | .facebook.com |
| dpr | 1.4630000591278076 | .facebook.com |
| sb | jVa6YaHou2Nev98LSBnWYOo7 | .facebook.com |
| fr | 0ZzdZn9Ygh60Xbk36.AWVC5uksSXTsGC3302SbE... | .facebook.com |

25. The c_user cookie contains that visitor's unencrypted Facebook ID. A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.

26. The fr cookie contains, at least, an encrypted Facebook ID and browser identifier.[25] The datr cookies also identifies a browser.[26] Facebook, at a minimum, uses the fr and c_user cookies to identify users by their Facebook IDs and corresponding Facebook profiles.[27]

27. Through the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Facebook to know, among other things, what webpages visitors to Defendants' websites are visiting and what products they are purchasing.[28]

28. Defendants also use "Advanced Matching." With Advanced Matching, Defendants' Pixels "look[s] for recognizable form field and other sources on your website that contain information such as first name, last name and email."[29] That information is recorded,

---

[25] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.
[26] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.
[27] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/.
[28] FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started.
[29] https://www.facebook.com/business/help/611774685654668?id=1205376682832142

9

"along with the event, or action, that took place."[30]  This information is also "hashed,"[31] meaning it is "[a] computed summary of digital data that is a one-way process."  In other words, it "cannot be reversed back into the original data."[32]

> You can use Advanced Matching to help:
> - Increase the number of attributed conversions. We can match more of the conversions that happen on your website to people on Meta. This helps you understand the impact of your ads on website conversions.
> - Increase your Custom Audience size. We're able to better match your website visitors to people on Meta and increase the size of your Custom Audience.
> - Decrease the cost per conversion. Conversion-optimized campaigns become more efficient because we can better identify and deliver ads to the types of people likely to take the actions you care about.

29.     Defendants disclose this information to Facebook so it can better match visitors to their Facebook profiles.

30.     As part of Advanced Matching, Defendants enabled "Automatic Advanced Matching."  That means Defendant's Pixels are configured to scan form fields containing a user's email address, first name, last name, phone number, gender, zip code, city and state.[33]  The highlighted line, along with the line three below it, shows that Defendants enabled Automatic Matching.

---

[30] FACEBOOK, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668?id=1205376682832142.
[31] DEFINITION OF HASH, https://www.pcmag.com/encyclopedia/term/hash
[32] *Id.*
[33] Facebook provides a corresponding look-up table: FACEBOOK, ADVANCED MATCHING, https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching.

```
33 fbq.registerPlugin("841232062592664", {__fbEventsPlugin: 1, plugin: function(fbq, instance, config) { fbq.loadPlugin(
34 fbq.loadPlugin("identity");
35 instance.optIn("841232062592664", "InferredEvents", true);
36 fbq.loadPlugin("jsonld_microdata");
37 instance.optIn("841232062592664", "MicrodataJsonLd", true);
38 config.set("841232062592664", "automaticMatching", {"selectedMatchKeys":["em","fn","ln","ph","ge","zp","ct","st"]});
39 fbq.loadPlugin("inferredevents");
40 fbq.loadPlugin("identity");
41 instance.optIn("841232062592664", "AutomaticMatching", true);
42 fbq.loadPlugin("iwlbootstrapper");
43 instance.optIn("841232062592664", "IWLBootstrapper", true);
44 fbq.loadPlugin("iwlparameters");
45 fbq.loadPlugin("estruleengine");
46 instance.optIn("841232062592664", "IWLParameters", true);
```

31. Defendants know that Facebook will match the Advanced Matching parameters with a customer's subsequent activity, thereby helping them "[i]ncrease the number of attributed conversions," "[i]ncrease [their] Custom Audience size," and "[d]ecrease the cost per conversion."[34]

32. By compelling a visitor's browser to disclose the Advanced Matching parameters and event data for videos, Defendants knowingly disclose information sufficiently permitting an ordinary person to identify a specific individual's website activity, including what webpages they visit and what products they purchase.

## CLASS ALLEGATIONS

33. **Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in Pennsylvania who have a Facebook account and who visited either cabelas.com, basspro.com or both (the "Class"). Plaintiff also seeks to represent a subclass of similarly situated individuals defined as all persons in Pennsylvania who have a Facebook account and who purchased a firearm from either cabelas.com, basspro.com or both (the "Subclass").

---

[34] FACEBOOK, ABOUT ADVANCED MATCHING FOR WEB, https://www.facebook.com/business/help/611774685654668?id=1205376682832142.

34. Subject to additional information obtained through further investigation and discovery, the above-described Class and Subclass may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

35. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class or Subclass. However, given the popularity of Defendants' websites, the number of persons within the Class and Subclass are believed to be so numerous that joinder of all members is impractical.

36. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and Subclass that predominate over questions that may affect individual members of the Class include:

   (a) whether Defendants collected users' PII, website activities and firearms purchases;

   (b) whether Defendant unlawfully disclosed and continues to disclose its users' PII, website activities and firearms purchases in violation of Pennsylvania Wiretapping Act, 8 Pa. Cons. Stat. § 5701, *et seq.*;

   (c) whether Defendants unlawfully disclosed and continue to disclose its users' PII, website activities and firearms purchases in violation of Uniform Firearms Act, 18 Pa.C.S. § 6111(i); and

   (d) whether Defendants disclosed its users PII, website activities and firearms purchases without consent.

37. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class and Subclass because Plaintiff, like all members of the Class, used Defendants' websites, and had his PII, website activities and firearms purchases disclosed by Defendants.

38. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action

12

litigation, including litigation concerning the data privacy and the Facebook Tracking Pixel in particular. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class and Subclass. Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class or Subclass. Plaintiff has raised viable statutory claims or the type reasonably expected to be raised by members of the Class and Subclass, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional representatives to represent the Class and Subclass, additional claims as may be appropriate, or to amend the definition of the Class and Subclass to address any steps that Defendant took.

39. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class and Subclass is impracticable. Even if every member of the Class and Subclass could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Pennsylvania Wiretapping Act
### 18 Pa. Cons. Stat. § 5701, *et seq.*

40. Plaintiff repeat the allegations contained in the paragraphs above as if fully set forth herein.

41. Plaintiff brings this Count individually and on behalf of the members of the Class.

42. The Pennsylvania Wiretapping Act prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. § 5703.

43. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at a rate of $100 per day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

44. At all relevant times, Defendants procured Facebook to track and intercept Plaintiff's and other Class and Subclass members' internet communications while navigating its websites. Defendant sent these communications to Facebook without authorization or consent from Plaintiff or Class or Subclass members.

45. Defendants, when procuring Facebook to intercept Plaintiff' communications, intended Facebook to learn the meaning of the content the visitor requested.

46. Plaintiff and Class and Subclass members had a justified expectation under the circumstances that their electronic communications would not be intercepted.

47. Plaintiff and Class and Subclass members were not aware that their electronic communications were being intercepted by Facebook.

## COUNT II
### Violation of the Uniform Firearms Act
### 18 Pa.C.S. § 6111(i)

48. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

49. Plaintiff brings this Count individually and on behalf of the members of the Subclass.

50. Section 6111(i) of the Uniform Firearms Act ("UFA") provides the following:

> **(i) Confidentiality.**--All information provided by the potential purchaser, transferee or applicant, including, but not limited to, the potential purchaser, transferee or applicant's name or identity, furnished by a potential purchaser or transferee under this section or any applicant for a license to carry a firearm as provided by section 6109 shall be confidential and not subject to public disclosure.  In addition to any other sanction or penalty imposed by this chapter, any person, licensed dealer, State or local governmental agency or department that violates this subsection shall be liable in civil damages in the amount of $1,000 per occurrence or three times the actual damages incurred as a result of the violation, whichever is greater, as well as reasonable attorney fees.

51. Plaintiff is a "purchaser" under the UFA because he purchased a firearm from Defendants.  On December 2, 2021, Plaintiff Irvin purchased a Henry Big Boy Classic Centerfire Lever-Action Rifle - .45 Colt from cabelas.com.

52. Defendants disclosed to Facebook information that Plaintiff provided to them in connection with his purchase of these firearms. Specifically, Defendants disclosed Plaintiff's name, address, his Facebook ID, the type of gun that he purchased, among other items.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. Determining that this action is a proper class action;

b. For an order certifying the Class and Subclass, naming Plaintiff as representative of the Class and Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

c. For an order declaring that Defendants' conduct violates the statute referenced herein;

d. For an order finding in favor of Plaintiff and the Class and Subclass on the counts asserted herein;

e. Awarding compensatory damages, including statutory damages where available, to Plaintiff and the Class and Subclass members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

f. For punitive damages, as warranted, in an amount to be determined at trial;

g. Ordering Defendants to disgorge revenues and profits wrongfully obtained;

h. For prejudgment interest on all amounts awarded;

i. For injunctive relief as pleaded or as the Court may deem proper;

j. For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit; and

k. Granting Plaintiff and the Class and Subclass members such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated: March 28, 2023

Respectfully submitted,

By: *Alex M. Kashurba*
**CHIMICLES SCHWARTZ KRINER
& DONALDSON-SMITH LLP**
Steven A. Schwartz (PA I.D. No. 50579)
Alex M. Kashurba (PA I.D. No. 319003)
Stephanie E. Saunders (PA I.D. No. 320481)
361 W. Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633
E-Mail: sas@chimicles.com
             amk@chimicles.com
             ses@chimicles.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Philip L. Fraietta*
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
             pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Ave., Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: creilly@bursor.com

*\*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

17