**SHOOK, HARDY & BACON L.L.P.**
Erin L. Leffler (PA ID No. 204507)
Two Commerce Square
2001 Market St., Suite 3000
Philadelphia, PA 19103
Telephone: (215) 278-2555
Facsimile: (215) 278-2594
eleffler@shb.com

*Attorneys for Defendants Cabela's L.L.C.*
*and BPS Direct, L.L.C.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID IRVIN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>CABELA'S L.L.C., *et al.*,<br><br>    Defendants. | Case No. 1:23-cv-00530-CCC |

### DEFENDANTS' REPLY IN SUPPORT OF
### THEIR MOTION TO DISMISS
### <u>PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT</u>

# INTRODUCTION

Plaintiff's Complaint should be dismissed. Plaintiff seeks to impose massive liability on Defendants Cabela's L.L.C. and BPS Direct, L.L.C. (collectively, "BPS") for their alleged use of using common advertising technology on its website. The Complaint asserts claims under the Wiretapping and Electronic Surveillance Control Act ("WESCA") and under Pennsylvania's Uniform Firearms Act ("UFA"). Both claims fail because Plaintiff does not allege a concrete injury. Plaintiff's only alleged harm is a bare statutory violation, which is not enough to confer standing. His WESCA claim also fails because he does not allege several of its key elements. And Plaintiff's UFA claim simply does not fit here. For the reasons BPS outlined in its Motion (Dkt. 38 and 39) and as discussed further below, Plaintiff's Complaint should be dismissed.

# ARGUMENT

**I.     Plaintiff Lacks Standing to Assert His Claims.**

Plaintiff lacks standing to assert both his Wiretap Act and UFA claims because he does not allege a concrete injury. The Complaint alleges that Plaintiff was harmed because his information was "unlawfully disclosed" to Facebook. Compl. (Dkt. 20) ¶ 9. As the Eastern District of Pennsylvania has already held, that alleged harm "most closely matches" a claim for public disclosure of private facts. *Barclift v. Keystone Credit Servs., LLC*, 585 F. Supp. 3d 748, 758 (E.D. Pa. 2022) (plaintiff's claims that the defendant's violated her "right not to have her private information shared with

third parties" "most closely matches the privacy cause of action for public disclosure of private facts.") (citing Restatement (Second) of Torts § 652A (Am. Law Inst. 1977)). Plaintiff does little to dispute this fact, because he cannot do so. *See* Compl. ¶¶ 9, 39, 70; *see also* Opp'n (Dkt. 47), p. 10 (conceding that "Plaintiff suffered an intangible harm akin to intrusion upon seclusion *and disclosure of private information*.").

Plaintiff's claim fails because the information allegedly disclosed to Facebook is not *private* information. At most, the Complaint alleges BPS disclosed Plaintiffs' interactions with BPS's website, but numerous courts have held that the disclosure of web browsing activity is not a traditionally recognized privacy interest. *See, e.g.*, *Mikulsky v. Noom, Inc.*, 2023 WL 4567096, at *5 (S.D. Cal. July 17, 2023) ("Plaintiff's conclusory allegation that she disclosed 'personal information'" including alleged "personally identifiable browsing history" does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information."); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (plaintiff lacked a concrete harm where she alleged the defendant intercepted her electronic communications, including her "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time.").

2

Moreover, under Pennsylvania law, the public disclosure of private facts requires "publicity," which means "a matter must be made public through communication to either the general public or enough people that the matter is 'substantially certain' to become public knowledge." *Perloff v. Transamerica Life Ins. Co.*, 393 F. Supp. 3d 404, 409–10 (E.D. Pa. 2019); *see also Burris v. Weltman, Weinberg & Reis, Co., L.P.A.*, 2022 WL 3580766, at *7 (M.D. Pa. Aug. 19, 2022) ("the public disclosure of private facts cause of action requires publicity.") (quotations omitted). Plaintiff's alleged disclosure "to one person"—Facebook— "does not meet this standard." *Perloff*, 393 F. Supp. 3d at 409–10. Thus, without publicity, Plaintiff has failed to allege that the type of harm he allegedly suffered bears a "close enough relationship to the tort of disclosure of private facts," for the simple reason that "*there was no publicity.*" *Barclift*, 585 F. Supp. 3d at 758 (emphasis in original). And "without that harm, Plaintiff has no common law analogue upon which to assert standing." *Burris*, 2022 WL 3580766, at *7.

For these reasons, Plaintiff's Complaint should be dismissed for lack of standing.

**I.    Plaintiff has not stated a WESCA claim.**

**A. Plaintiff Does Not Allege an Interception in Pennsylvania.**

It is clear from the allegations in the Amended Complaint that no interception occurred in Pennsylvania. Plaintiff claims it does, pointing to the fact that he

accessed BPS's website while in Pennsylvania. Opp'n, p. 8 (Plaintiff "'access[ed] the website and complet[ed] [his] purchase,' and that during that time he 'was located in Pennsylvania.'"). But as BPS argued in its Motion, *Plaintiff's* location is immaterial to the place of interception. *See Larrison v. Larrison*, 750 A.2d 895 (Pa. Super. 2000) (refusing to apply WESCA to a phone call placed in Pennsylvania because the interception occurred in New York).

The parties agree that according to a recent Third Circuit opinion interpreting WESCA, an "interception occurs where there is an act taken to gain possession of communications." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022). Here, Plaintiff alleges the act taken to gain possession of his communications on Cabela's website was BPS's integration of the pixel in the website code. Compl. ¶ 14 ("[w]hen the Facebook Tracking Pixel captures an action, it sends a record to Facebook."). The pixel is not located on Plaintiff's browser, but was "integrated" into BPS and Cabela's websites. BPS's websites are hosted on computer servers. *See Popa*, 52 F.4th at 132 (the "place of interception is the point at which the signals were routed to [a third party's] servers."). But nowhere in the Complaint does Plaintiff allege BPS's servers are located in Pennsylvania or that BPS integrated the Meta Pixel onto its website from a location in Pennsylvania. Thus, there are simply no allegations demonstrating that the alleged interception could have occurred in Pennsylvania.

4

This outcome makes sense. WESCA does not apply to out-of-state conduct, because Pennsylvania courts do not have power to control conduct occurring outside the state. *See Larrison*, 750 A.2d at 898; *see also Commonwealth v. Firestone*, 385 A.2d 489, 490 (Pa. Super. Ct. 1978) ("[j]urisdiction in criminal matters rests solely in the courts of the state or country in which the crime is committed."); *see also Zarif v. Hwareh.com, Inc.*, 2023 WL 5242452, at *3, *4 (S.D. Cal. Aug. 15, 2023) (granting motion to dismiss similar claims for lack of personal jurisdiction, because hosting a website that has "universal accessibility" is not enough to "justify hauling a defendant across state lines."). Because Plaintiff does not allege that the Facebook Pixel was added to BPS's website in Pennsylvania, or that the servers that host BPS's computer code are located in Pennsylvania—WESCA does not apply here. Plaintiff's WESCA claim should be dismissed.

### B. Plaintiff Does Not Allege the Interception of the "Contents" of a Communication.

Despite Plaintiff's argument otherwise, the Complaint does not sufficiently allege that the Facebook Pixel intercepted the "contents" of his communications with Cabela's website. As BPS already demonstrated, the information Plaintiff alleges BPS disclosed to Facebook—the URL accessed; "Microdata," including the title and description of the webpage visited; button clicks; and text, such as name and address, entered into online forms—are not contents. *See* Mot., pp. 18–21; *see also* Opp'n, pp. 15–16.

Plaintiff relies on a single court's "view" that a "descriptive URL" can be considered "contents" within the meaning of California's wiretap statute. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11 (N.D. Cal. Dec. 22, 2022). But the Third Circuit distinguishes between "extrinsic information used to route a communication and the communicated content itself." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). Addresses, phone numbers, and URLs "may be dialing, routing, addressing, or signaling information, but only when they are performing such a function." *Id.* Despite the numerous screenshots that reflect information the pixel might disclose to Facebook, Plaintiff has not alleged any of the URLs he visited were intercepted, much less that the URLs or information about the pages he visited were used for anything other than dialing, routing, addressing, or signaling functions. In fact, nowhere in the Complaint does Plaintiff allege that any information collected by the Pixel has been associated with his Facebook profile or that Facebook presented advertisements to him based on his visit to Cabela's website. For these reasons, the Court should find that Plaintiff has not adequately alleged that the content of any of his communications on Cabela's website were intercepted.

### C. Plaintiff Does Not Allege that His Communications Were Intercepted Through a "Device or Apparatus."

Plaintiff argues that the terms "device" and "apparatus" are so broad that they include intangible computer code like the Facebook Pixel. *See* Opp'n, p. 17. Yet

6

Plaintiff makes no effort to address the fact that the ordinary meaning of those terms relates only to *tangible* objects. Instead he relies on *Commonwealth v. Smith*, 136 A.3d 170 (Pa. Super. Ct. 2016), where the court found a cell phone used only as a voice recorder fell outside of the Act's telephone exception. *Id.* at 173–74. But that case is inapposite. The scope of the telephone exception does not have anything to do with whether the Meta Pixel code is a device or apparatus. Indeed, *Smith*'s finding that a cell phone is a "device" under the Act is consistent with BPS's position, because a cell phone is a tangible object.

Consistent with this plain meaning—and with numerous other courts analyzing this same issue—the Court should find that computer code cannot be a "device" or "apparatus" under the Wiretap Act. *See Arthurs v. City of Pittsburgh*, 185 Pa. Super. 85, 89 (1958) ("The plain and unmistakable terms of a statute must be interpreted according to their usual and ordinary meaning."); *see also Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal wiretap claim because "the word 'device' does not encompass software"); *Jacome v. Spirit Airlines*, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (dismissing Florida wiretap claim because session replay software is not a "device or apparatus"); *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (same); *cf. United States v. Ackies*, 918

7

F.3d 190, 199 n.5 (1st Cir. 2019) (rejecting argument that software is a "device" under Federal Stored Communications Act); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 972 (S.D. Cal. 2012) ("[S]oftware is not a tangible good or service.").

### D. Plaintiffs Consented to the Disclosure of His Communications to Facebook.

Plaintiff argues that he could not have consented to BPS's use of the Facebook Pixel because (1) Facebook's policy did not apply to the disclosure of firearm data and (2) BPS's privacy policy is not an enforceable contract. Plaintiff is wrong on both fronts.

First, as an "active" Facebook user, Plaintiff agreed to Facebook's policies.[1] Compl. ¶¶ 6, 40. This includes Facebook's Terms of Service, the Cookies Policy, and the Data Policy, as well as any updates Facebook subsequently made to those policies.[2] Plaintiff argues that "even if [he] had agreed to [Facebook's policies], it

---

[1] Although courts generally may not consider matters outside of the complaint when ruling on a motion to dismiss, courts may rely on documents that are "*integral to or explicitly relied upon* in the complaint." *Cerome v. Moshannon Valley Corr. Ctr./Cornell Companies, Inc.*, No. 09-2070, 2010 WL 4948940, at *3 (3d Cir. Dec. 7, 2010) (citation and internal quotation marks omitted). Without question, Plaintiff relies on Facebook's policies in his Complaint. *See* Compl. ¶¶ 40–44.

[2] *See* Dkt. 20 ¶ 40 n.34; Facebook's Terms of Service ("we may need to update these Terms from time to time to accurately reflect our services and practices, to promote a safe and secure experience on our Products and services, and/or to comply with applicable law. Unless otherwise required by law, we will notify you before we make changes to these Terms and give you an opportunity to review them before they go

8

would not constitute consent to the interception at issue," relying on *In re Meta Pixel Healthcare Litigation*, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022). Opp'n, p. 19. But that case involved personal health information, whereas this case involves allegations related to Plaintiff's web browsing and market data—the very type of information he agreed Meta could receive. *See* Compl. ¶¶ 10–11 (describing Facebook not only as a social networking platform, but a site that "sells advertising space by highlighting its ability to target users."); *see also* Facebook's Privacy Policy ("a business could tell us about a purchase you made in its store."); Facebook's Cookie's Policy, Dkt. 39-3 at 4 ("Cookies allow us to help deliver ads to people who have previously visited a business's website, purchased its products or used its apps and to recommend products and services based on that activity."). This case is more analogous to *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), where the court found that Facebook's disclosures were adequate to notify users of Facebook's tracking activity. *Id.* (noting Facebook's policies disclose "the precise conduct at issue" and therefore constitute adequate notice). The decision in *In re Meta* does not change that. *See In re Meta*, 2022 WL

---

into effect. Once any updated Terms are in effect, you will be bound by them if you continue to use our Products."); *see also* Dkt. 20 ¶ 40 n.36; Facebook's Data Policy ("We'll notify you before we make material changes to this Policy. You'll have the opportunity to review the revised Policy before you choose to continue using our Products.").

9

17869218, at *9 ("The act of navigating to a patient portal on a healthcare provider's website is not the general internet browsing contemplated in *Smith*.").

These disclosures are important because in Pennsylvania, a person consents to an interception when they are given notice but choose to proceed anyway. *See Popa*, 52 F.4th at 132 (the mutual consent exception does not require "actual knowledge"). Thus, Plaintiff cannot maintain any of his claims based on the alleged disclosure of his web browsing history, because that is precisely the type of information Plaintiff agreed to allow Facebook to collect.

Plaintiff also consented to the disclosure of his website activity on BPS's website by accepting BPS's privacy policy. As Plaintiff explains, BPS's privacy policy is a browserwrap agreement. Browserwrap agreements are routinely enforced where users have actual notice or the website puts a reasonably prudent user on inquiry notice of its terms. *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 118 (W.D. Pa. 2019) (listing cases across the country where courts have enforced browserwrap agreements). Generally, the enforceability of browserwrap agreements "turn[s] on whether the terms or a hyperlink to the terms are reasonably conspicuous on the webpage." *Childs v. Fitness Int'l LLC*, 2023 WL 3594180, at *2 (E.D. Pa.

May 22, 2023). BPS conspicuously posts its privacy policy in the footer of every webpage on its website.[3]

As BPS already demonstrated, once a user opens the privacy policy, the policy notifies visitors about its use of tracking pixels. The policy states "[w]e may use third party-placed tracking pixels and Cookies." The policy continues to explain, in an easily accessible chart, that BPS discloses commercial information about its website visitors, which includes the "products/services purchased" for "ad customization."[4] By continuing to use Cabela's website even after Plaintiff was put on notice that the website uses pixels, Plaintiff consented to the sharing of his activities on Cabela's website with Facebook.

The privacy policy also meets the WESCA's consent requirements. As BPS explained in its Motion, the WESCA does not require actual consent. But under the WESCA, there is no unlawful interception where one party "should have known, that the conversation was recorded." *Commonwealth v. Byrd*, No. 1818 WDA 2016, 2018 WL 1465219, at *5 (Pa. Super. Mar. 26, 2018) (quoting *Commonwealth v.*

---

[3] Plaintiff argues that BPS's browserwrap is unenforceable, relying on *Childs v. Fitness Int'l LLC*, 2023 WL 3594180 (E.D. Pa. May 22, 2023) and *James v. Glob. TelLink Corp.*, 852 F.3d 262, 267 (3d Cir. 2017). However, those cases have no application here because they address defendants' efforts to enforce arbitration clauses for claims wholly unrelated to a website.

[4] https://web.archive.org/web/20211103211005/https://www.basspro.com/shop/en/privacy-policy-summary-bass-pro-shops. Although BPS recently updated its Privacy Policy, both versions of the policy include similar disclosures.

*Diego*, 119 A.3d 370, 377 (Pa. Super. 2015), appeal denied, 129 A.3d 1240 (Pa. 2015)).

For each of these reasons, the Court should find that Plaintiff consented to the disclosure of his activity on Cabela's website to Facebook.

## II.  Plaintiff's Claim Under the Uniform Firearms Act Fails.

### A.  Plaintiff has not alleged an improper "disclosure."

Plaintiff does not dispute that the UFA only prohibits the "disclosure" of information about an individual's firearm purchase, not aiding or assisting in disclosure. Yet, his own Complaint alleges just that. Plaintiff claims that BPS "assisted Facebook" with supposedly intercepting his communications. Compl. ¶¶ 9, 38. Thus, Plaintiff's allegations identify Facebook as the entity making the "disclosure" at issue, not BPS. Plaintiff does not even attempt to address his inconsistent allegations (indeed, he does not cite the Complaint once in the relevant section of his brief, *see* Opp'n, pp. 21–22). Without more, Plaintiff has failed to allege that *BPS* engaged in any "disclosure" at all.

### B.  Plaintiff does not allege that BPS disclosed information "furnished" under the UFA.

The UFA prohibits only the public disclosure of information which was "furnished by a potential purchaser or transferee under [Section 6111]." 18 Pa.C.S. § 6111. And Section 6111(b), relates only to an "application/record of sale." 18 Pa.C.S. § 6111(b)(1). But Plaintiff still does not allege that BPS disclosed an

12

application or record of sale as contemplated by Section 6111. Instead, he claims that BPS "assisted" Facebook in disclosing his activity on BPS's website. *See* Compl. ¶¶ 9, 38. Plaintiff's UFA claim should be dismissed.

### C. Plaintiff does not allege a "public" disclosure.

Finally, Plaintiff does not allege a "public" disclosure under the UFA. *See* 18 Pa.C.S. § 6111(i). Plaintiff relies on *Doe v. Franklin County* to argue that disclosure "to any other person" constitutes a public disclosure for the purposes of the UFA. Opp'n, p. 25. But the Court's holding in *Franklin County* was not so broad. Instead, the Court held that a person "violates Section 6111(i) of the UFA by revealing an applicant's name or identity to a person not (1) authorized to receive such information by statute; (2) involved in the operation or management of the sheriff's office; (3) representing a law enforcement or criminal justice agency; or (4) otherwise authorized by an applicant." *Doe v. Franklin Cnty.*, 139 A.3d 296, 307 (Pa. Commw. Ct. 2016). As BPS argued in its initial motion, Plaintiff does not allege that his name or identity was disclosed to a person not "authorized by" Plaintiff to receive it. The opposite is true; Plaintiff alleges that his information was disclosed to Facebook, who had Plaintiff's consent to collect information about his web browsing activities. Plaintiff's UFA claim should be dismissed.

### CONCLUSION

For these Plaintiff's Amended Complaint should be dismissed.

|  |  |
|---|---|
|  | SHOOK, HARDY & BACON L.L.P. |
| Dated: August 25, 2023 | By: <u>*/s/ Erin L. Leffler*</u><br>Erin L. Leffler (PA ID No. 204507)<br>SHOOK, HARDY & BACON L.L.P.<br>Two Commerce Square<br>2001 Market St., Suite 3000<br>Philadelphia, PA 19103<br>Tel: (215) 278-2555<br>eleffler@shb.com<br><br>Jennifer A. McLoone (*pro hac vice*)<br>SHOOK, HARDY & BACON L.L.P.<br>201 South Biscayne Blvd., Suite 3200<br>Miami, FL 33131<br>Tel: (305) 358-5171<br>jmcloone@shb.com<br><br>Anna A. Gadberry (*pro hac vice*)<br>SHOOK, HARDY & BACON L.L.P.<br>2555 Grand Boulevard<br>Kansas City, MO 64108<br>Tel: (816) 474-6550<br>agadberry@shb.com<br><br>Lindsey M. Knapton (*pro hac vice*)<br>SHOOK, HARDY & BACON L.L.P.<br>1600 17th Street, Suite 450<br>Denver, CO 80202<br>Tel: (303) 285-5300<br>lknapton@shb.com<br><br>*Attorneys for Defendants Cabela's L.L.C. and BPS Direct, L.L.C.* |

## CERTIFICATE OF SERVICE

I, Erin L. Leffler, hereby certify that on August 25, 2023, I filed the foregoing Reply in Support of Defendants' Motion to Dismiss by CM/ECF and served a true and correct copy by e-filing and by electronic mail on the following counsel of record:

>Alex Kashurba
>Steven A. Schwartz
>Chimicles Schwartz Krinner & Donaldson-Smith LLP
>361 W. Lancaster Avenue
>Haverford, PA 19041
>Tel: 610-642-8500
>amk@chimicles.com
>sas@chimicles.com
>
>Joshua D. Arisohn
>Burson & Fisher, P.A.
>1330 Avenue of the Americas
>New York, NY 10019
>Tel: 646-837-7103
>jarisohn@bursor.com

*Attorneys for Plaintiff*

By: */s/ Erin L. Leffler*
     Erin L. Leffler

*Attorney for Defendant Cabela's L.L.C. and BPS Direct, L.L.P.*